IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

TODD A. WEILER,                          )
                                         )
          Plaintiff,                     )
                                         )
    v.                                   )     CIVIL ACTION NO. 1:10-CV-157 TSE
                                         )
ARROWPOINT CORPORATION, *et al*.,        )
                                         )
          Defendants.                    )
                                         )

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

BRIGLIA HUNDLEY NUTTALL & KAY, PC
Douglas R. Kay, Esq.
1921 Gallows Road, Suite 750
Vienna, VA 22182
(703) 883-0880 (T)
(703) 883-0899 (F)

Counsel for Defendants Arrowpoint
Corporation, Arrowpoint International and
Chrystle Small

March 29, 2010

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES. ................................................................................... iii

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS. ................................................................................... 1

ARGUMENT. ...................................................................................................... 5

I.      STANDARD OF REVIEW. ........................................................................ 5

II.     VIRGINIA LAW GOVERNS SUBSTANTIVE MATTERS OF TORT AND
        CONTRACT LAW. .................................................................................... 5

III.    PLAINTIFF'S VARIOUS FRAUD CLAIMS (COUNTS I-V) FAIL TO STATE A
        CLAIM UPON WHICH RELIEF MAY BE GRANTED. ................................ 6

        A.      Weiler's Fraud Claims Are Barred By The Economic Loss Doctrine. ................... 7

        B.      Counts I And II Fail To Allege Actionable Fraudulent Concealment. .................. 8

                1.      The Alleged Concealment Occurred After Weiler Executed The SRA. ...... 9

                2.      Defendant's Had No Duty To Disclose The Financial Covenants And
                        Weiler Failed to Investigate Fully. .......................................................... 10

        C.      Count III Does Not State A Claim For Constructive Fraud. ................................ 12

        D.      Count IV Fails To Allege An Actionable Fraud Claim. ...................................... 13

                1.      Count IV Relies On Statements Of Future Events. ................................... 13

                2.      It Is Implausible That Arrowpoint Would Have No Intention To Pay The
                        Note. ......................................................................................................... 14

                3.      Reliance On The Alleged Promises Are Facially Implausible. ................. 15

        E.      Count V Fails To Allege An Actionable Constructive Fraud Claim. .................. 16

                1.      Promises Of Future Action Will Not Support A Claim Of Constructive
                        Fraud. ....................................................................................................... 16

                2.      Arrowpoint's Loan Covenants With The Bank Cannot Support A Claim
                        of Constructive Fraud By Weiler. ........................................................... 17

II.    WEILER'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED. ................... 18

    A.    Weiler's Right To Bring Suit Falls To Satisfy A Condition Precedent. ............... 18

    B.    Arrowpoint Is Not In Default Of Its Payment Obligation. ..................................... 19

III.   WEILER'S CONSPIRACY CLAIM MUST BE DISMISSED. ....................................... 20

    A.    Plaintiff Has Not Alleged Proper Damages To State A Claim Under Virginia's
        Business Conspiracy Statute. ............................................................................... 20

    B.    Plaintiff Has Failed To Allege An Agreement. ..................................................... 20

    C.    Weiler Failed To Allege Legal Malice Or A Plausible Motive
        For A Conspiracy. ................................................................................................ 21

IV.    WEILER'S <u>QUANTUM MERUIT</u> AND UNJUST ENRICHMENT CLAIMS MUST
    BE DISMISSED. ................................................................................................................ 24

V.    WEILER'S DECLARATORY JUDGMENT AND REFORMATION CLAIMS MUST
    BE DISMISSED. ................................................................................................................ 24

    A.    The Non Solicitation Agreement is Lawful. ........................................................ 24

        1.    <u>Legal Standard For Restrictive Covenants</u>. ............................................ 24

        2.    <u>The Non Solicitation Covenants In The SRA Are Lawful</u>. ...................... 25

    B.    Weiler Is Not Entitled To The Declaration Or Reformation Sought. ................... 28

        1.    <u>Weiler Is Not Entitled To A Declaration That There Was No Default Of
            The Financial Covenants</u>. ........................................................................ 28

        2.    <u>Weiler Is Not Entitled To A Declaration That Arrowpoint Is Not Excused
            From Nonpayment Of The Note</u>. ............................................................. 29

        3.    <u>Weiler Is Not Entitled To A Declaration That The Note And
            Subordination Agreement Be Read To Afford Weiler A "Judicial
            Remedy" In The Event Of Payment OF The Note</u>. ................................... 29

        4.    <u>Weiler Is Not Entitled To Reformation</u>. .................................................. 29

<u>CONCLUSION</u>. ......................................................................................................................... 29

# TABLE OF AUTHORITIES

## FEDERAL CASES

Allen v. Lloyd's of London,
    94 F.3d 923 (4th Cir. 1996). ............................................................. 6

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009). ............................................................. 5, 14

Bank of Montreal v. Signet Bank,
    193 F.3d 818 (4th Cir. 1999). ............................................................. 10

Bass v. E.I. DuPont de Nemours & Co.,
    324 F.3d 761 (4th Cir. 2002). ............................................................. 5

Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC,
    261 F. Supp. 2d 483 (E.D. Va. 2003). ..................................... 20, 21

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007). ............................................................. 5, 21

Berg & Berg Enterprises, LLC v. Boyle,
    178 Cal. App. 4th 1020, 100 Cal. Rptr. 3d 875 (Cal. App. 6 Dist.,2009) ...................... 13

Bremen v. Zapata Off-Shore Co.,
    407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). ......................... 6

Chisolm v. TranSouth Fin. Corp.,
    194 F.R.D. 538 (E.D. Va. 2000). ............................................................. 20

Giarrantano v. Johnson,
    521 F.3d 298 (4th Cir. 2008). ............................................................. 5

Harrison v. Westinghouse Savannah River Co.,
    176 F. 3d 776 (4th Cir. 1999). ............................................................. 20

Hitachi Credit America Corp. v. Signet Bank,
    166 F.3d 614 (4th Cir.1999). ............................................................. 6, 15

Iodice v. United States,
    289 F.3d 270 (4th Cir. 2002). ............................................................. 5

Klaxon Co. v. Stentor Elec. Mfg. Co.,
    313 U.S. 487 (1941). ............................................................. 5

L&E Corp. v. Days Inn of America, Inc.,
  992 F.2d 55 (4th Cir. 1993). ...................................................................... 29

Lanmark Technology, Inc. v. Canales,
  454 F.Supp.2d 524 (E.D.Va 2006). ........................................................... 27

Moore v. Allied Chem. Corp.,
  480 F. Supp. 364 (E.D. Val 1979). ............................................................ 20

Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,
  108 F.3d 522 (4th Cir.1997). ..................................................................... 22

Nationwide Mut. Fire Ins. Co. v. Jones,
  577 F.Supp. 968 (W.D.Va.1984). .............................................................. 20

Papasan v, Allain,
  478 U.S. 265 (1986). ................................................................................... 5

Peterson v. Cooley,
  142 F.3d 181 (4th Cir. 1998). ..................................................................... 20

Petra Int'l Banking Corp. v. First American Bank of Virginia,
  758 F.Supp.1120 (E.D.Va. 1991). ............................................................. 22

Princeton Woods, LLC v. PNC Bank,
  2009 WL 3614983 (E.D. Va. 2009). ............................................................. 7

Randall v. United States,
  30 F.3d 518 (4th Cir, 1994). ......................................................................... 5

Robertson v. First Union Nat. Bank,
  350 S.C. 339, 565 S.E.2d 309 (S.C. App. 2002). ..................................... 22

Stone Castle Fin,, Inc. v. Friedman, Billings, Ramsey & Co.,
  191 F. Supp. 2d 652 (E.D. Va. 2002). ....................................................... 21

Strategic Resources, Inc. v. Nevin,
  2005 WL 314394, 2005 U.S. Dist. Lexis 30985 (E.D. Va. Nov. 23, 2005). .................... 24

Werth v. Fire Adjust. Bureau,
  160 Va. 845, 171 S.E. 255 (1933) cert. denied 290 U.S. 659 (1933). ............................. 21

White v. Patocska,
  589 F.Supp.2d 631 (E.D. Va. 2008). ...................................................... 9, 10

# STATE CASES

Allen Realty Corp. v. Holbert,
   227 Va. 441, 318 S.E.2d 592  (1984). .................................................................. 9

Augusta Mutual Ins. Co. v. Mason,
   274 Va. 199, 645 S.E.2d 290 (2007)............................................................... 7, 8

Blair Constr., Inc. v. Weatherford,
   253 Va. 343, 485 S.E.2d 137 (1997)................................................................. 17

Clay v. Butler,
   132 Va. 464, 112 S.E.697(1922)........................................................................ 9

Coal River Collieries v. Eureka Coal & Wood Co.,
   144 Va. 263, 132 S.E. 337 (1926)..................................................................... 23

Devnew v. Flagship Group, Ltd,.
   75 Va. Cir. 436, 2006 WL 6345732 (2006). ..................................................... 26

Dunn Construction Co., Inc. v. Cloney,
   278 Va. 260, 682 S.E.2d 943 (2009).................................................................. 7

Ellis & Myers Lumber Co. v. Hubbard,
   123 Va. 481 (1918). .......................................................................................... 23

Evaluation Research Corp. v. Alequin,
   247 Va. 143, 439 S.E.2d 387 (1994)............................................................ 12, 17

Filak v. George,
   267 Va. 612, 594 S.E.2d 610 (2004).................................................................. 7

Foreign Mission Rd. v. Wade,
   242 Va. 234, 409 S.E.2d 144 (1991).................................................................. 7

Foti v. Cook,
   220 Va. 800, 263 S.E.2d 430 (1980)................................................................. 27

Harris v. Dunham,
   203 Va. 760, 127 S.E.2d 65 (1962)................................................................... 11

Hechler Chevrolet, Inc. v. General Motors Corp.,
   230 Va. 396, 337 S.E.2d 744 (1985)................................................................. 21

Kern v. Freed Co.,
    224 Va. 678 (1983). ............................................................................................... 22

Lemon v. Hufford,
    23 Cir. CL07590, 77 Va. Cir. 386 (2009) ..................................................... 23

Lerner v. Gudelsky Co.,
    230 Va. 124, 334 S.E.2d 579 (1985)............................................................... 18

Lumbermen's Underwriting Alliance v. Dave's Cabinet, Inc.,
    258 Va. 377, 520 S.E.2d 362 (1999)............................................................... 13

Mongold v. Woods,
    278 Va. 196, 677 S.E.2d 288 (2009)............................................................... 22

Nedrich v. Jones,
    245 Va. 465, 429 S.E.2d 201 (1993)........................................................ 22, 23

O'Dell v. Appalachian Corp.,
    153 Va. 283, 149 S.E. 487 (1929)................................................................... 13

Omniplex World Services Corp. v. US Investigations Services,
    270 Va. 246 (2005). ................................................................................... 24, 27

Packard Norfolk, Inc. v. Miller,
    198 Va. 557, 95 S.E.2D 207 (1956)................................................................. 9

Patrick v. Summers,
    235 Va. 452, 369 S.E.2d 162 (1988)............................................................... 14

Prospect Development Co., Inc. v. Bershader,
    258 Va. 75, 515 S.E.2d 291(1999)................................................................... 17

Richardson v. Paxton Co.,
    203 Va. 790 (1962). ......................................................................................... 25

Royer v. Board of County Supervisors,
    176 Va. 268, 10 S.E.2d 876 (1940)........................................................... 22, 24

Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.,
    236 Va. 419, 374 S.E.2d 55 (1988).................................................................. 7

Soble v. Herman,
    175 Va. 489, 9 S.E.2d 459 (1940)................................................................... 13

Supervalu, Inc. v. Johnson,
      276 Va. 356, 666 S.E.2d 335 (2008)................................................................ 17

## MISCELLANEOUS AUTHORITIES

VA. CODE ANN.§8.2-202. ................................................................................... 24

VA. CODE ANN.§13.1-690. ................................................................................. 13

Defendants Arrowpoint Corporation ("Arrowpoint"), Arrowpoint International and Chrystle Small, by counsel, file this Memorandum in support of their Motion to Dismiss the complaint of Plaintiff Todd A. Weiler pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Careful review of Weiler's cumbersome and repetitive 56 page complaint reveals little more than his disappointment with the several agreements he chose to execute. But it takes more than buyer's remorse to state a claim. Serious consideration of the complaint demonstrates that Weiler is the only party in breach of the several agreements at issue. Moreover, his hopeless bid to state a valid tort claim is similarly misguided. This Motion to Dismiss must be granted.

## STATEMENT OF FACTS

Arrowpoint employed Weiler from 2003 to 2008. Compl ¶11. During that time, Weiler was actively involved in the management as the second-ranking officer, was a significant shareholder and was a member of the board of directors of Arrowpoint. Compl ¶10. Defendant Chrystle Small is the CEO and majority shareholder of Arrowpoint.

Throughout Weiler's employment with Arrowpoint and continuing to the present time, Arrowpoint had a credit facility (the "Credit Facility") subject to annual renewal with Defendant Virginia Commerce Bank (the "Bank"). Weiler was a co-guarantor of the Credit Facility and familiar with its terms and conditions. Compl ¶50. Weiler understood that the Credit Facility required Arrowpoint to financially healthy as measured by, among other things, a positive net worth and net income. Compl ¶52-3. Weiler knew that the Bank's annual review of the Credit Facility would occur in September 2008. Compl ¶49.

In the summer of 2008, Arrowpoint and Weiler negotiated the sale of Weiler's shares in Arrowpoint.  Compl ¶49.  On or about July 28, 2008, Arrowpoint provided Weiler with a draft stock redemption agreement and promissory note.[1]  The draft agreements required Weiler to enter into a subordination agreement with the Bank that would put Weiler's right to payment of any promissory note behind the Bank's right to repayment of the Credit Facility.  Compl ¶¶23, 44.  At the same time, Arrowpoint's attorneys informed Weiler that they represented only Arrowpoint, that the negotiated sale of Weiler's Arrowpoint shares was an arm's length transaction and that he should seek the advice of independent counsel.  Compl ¶28.  Weiler retained independent counsel but later terminated the relationship.  Compl ¶30.

On or about August 8, 2008, Arrowpoint and Weiler agreed on the consideration for Arrowpoint's purchase of Weiler's shares.  Compl. ¶38.  On August 11, 2008, Arrowpoint and Weiler executed a Stock Redemption Agreement ("SRA") which provided that Weiler would tender his shares to Arrowpoint in return for $4 million paid in the following manner (1) $650,000 cash, (2) forgiveness of certain debt Weiler owed to Arrowpoint and (3) the remaining $3,044,929 in the form of a Subordinated Non-Negotiable Promissory Note attached to the SRA (the "Note").  Compl. ¶38; SRA ¶2(c).

In the SRA, Weiler represented:

"Shareholder is not relying on any representations, promises or agreements of any person except to the extent any representations, promises or agreements are specifically set forth in this Agreement."  SRA ¶3(d).

"Neither [Arrowpoint] nor any other party has made any oral or written representation, inducement,  promise or agreement to Shareholder in connection with the purchase and redemption of the Shares, other than expressly set forth in this Agreement."  SRA ¶3(e).

---

[1] The parties anticipated consideration for Weiler's shares would in part be paid over time as provided for in a promissory note.

"Except for the representations and warranties of Shareholder and [Arrowpoint] contained in Section 3 and Section 4, respectively, of this Agreement, neither party, or its directors, officers, employees, agents, advisors or representatives, makes or will be deemed to have made any representation or warranty, either express or implied."  SRA ¶10(e).

Notwithstanding his representations within the SRA to the contrary, Weiler claims he relied on an oral assurance of Small in August 2008 that Arrowpoint would make future payments under the Note from 2009 to 2012.  Compl ¶40.

The parties understood that the SRA was contingent upon approval of the Bank or some other similar senior lender.  SRA ¶2(a).  Moreover, Weiler agreed that the Note would be non-negotiable and subordinated to "any existing and future senior secured debt of [Arrowpoint]".  Note ¶16, 18.  Weiler further agreed "to enter into subordination agreement(s) as reasonably requested by Maker and Maker's senior lender for purposes of subordinating payment of the indebtedness evidenced by this Promissory Note to any future senior secured lender of the Maker."  Compl ¶48; Note ¶18.  On October 15, 2008, (consistent with his obligations under the SRA and the Note ) Weiler executed a subordination agreement with the Bank (the "Subordination Agreement").  Compl. ¶69; Exh. 3.

Arrowpoint and the Bank reviewed and ultimately renewed the Credit Facility in a commitment letter dated September 25, 2008 (the "Commitment Letter").  Compl. ¶¶55; 64; 87.  Like predecessor commitment letters outlining the terms of the Credit Facility familiar to Weiler, the Commitment Letter contained certain financial covenants including net worth and net income requirements to be maintained by Arrowpoint.  Id.  Weiler knew that Arrowpoint and the Bank had agreed to a new Credit Facility prior to executing the Subordination Agreement.  Id.  Weiler did not request a copy of the Commitment Letter prior to executing the Subordination Agreement.  Instead, Weiler supposedly relied on statements of Defendants as to the terms of the

Commitment Letter and how those terms might affect the default provisions in the Subordination Agreement.  Compl. ¶¶ 64- 69.

By December 2008, Arrowpoint (not unlike innumerable other businesses across the world)  had suffered financial reverses causing it to be in default of the financial covenants spelled out in the Commitment Letter.  Compl. ¶¶70, 73, 75, 87, 89.  In January 2009, the Bank instructed Arrowpoint not to make payments due Weiler under the Note.  Compl. ¶92.  Arrowpoint and the Bank provided Weiler with actual notice that Arrowpoint would not be making payments under the Note due to its default under the Commitment Letter.  Compl. ¶¶70, 73, 75, 87, 89.  When later requested by him, the Bank sent formal notice of Arrowpoint's default to Weiler in June 2009.  Compl. ¶92.  By December 2009, Arrowpoint's financial condition improved.  Arrowpoint has begun making monthly payments to Weiler on the Note beginning at the end of December 2009 through the date of filing the complaint.  Compl. ¶¶102- 106.

The Subordination Agreement provides in pertinent part:

"The undersigned Subordinated Creditor [Weiler], for value received…to induce [the Bank] at its option at any time or from time to time to lone or continue the presently outstanding loan of monies in the maximum aggregate principal sum of $2,500,000.00 … for the account of …[Arrowpoint]…does hereby agree with Bank as follows: Subordination Agreement p. 1.

1.      "The payment of any and all of the [Note] is expressly subordinated to the [Credit Facility].  Subordination Agreement ¶1.

6.      "While the [Credit Facility] remains unpaid or until there is any obligation on the part of Bank to advance monies which would constitute Superior Indebtedness hereunder, [Weiler] will not ask for, demand, sue for, take, receive or accept from [Arrowpoint], by setoff  or in any other manner, any payment or distribution on account of [the Note] nor present any instrument evidencing the [Note] for payment." Subordination Agreement ¶6.

Notwithstanding his contractual obligation not to do so, Weiler has filed this suit against Arrowpoint and others.

## ARGUMENT

### I.   STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of a complaint. <u>Randall v. United States</u>, 30 F.3d 518, 522 (4th Cir, 1994).  While, the Court must"[t]ake the facts in the light most favorable to the plaintiff, " but " need not accept the legal conclusions drawn from the facts, " and  "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." <u>Giarrantano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008) (citation omitted).  Moreover, the Court need not "accept as true a legal conclusion couched as a factual allegation."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Papasan v, Allain</u>, 478 U.S. 265, 286 (1986)).  In order to avoid dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim."  <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2002); <u>Iodice v. United States</u>, 289 F.3d 270, 281 (4th Cir. 2002). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.  This standard was recently reinforced by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009), which held that the pleading standard of Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  (citing <u>Twombly</u>, 550 U.S. at 555.)  Judged by this standard, the Complaint must be dismissed as to Defendants Arrowpoint, Arrowpoint International and Small.

### II.   VIRGINIA LAW GOVERNS SUBSTANTIVE MATTERS OF TORT AND CONTRACT LAW

This action was brought in diversity. Thus, the choice-of-law rules of Virginia apply. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496-7 (1941).  Under Virginia law, the

parties to a contract may agree as to the law which will govern their transaction, and choice-of-law provisions are recognized as valid and will generally be enforced by the courts absent violations of public policy. See Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996). Similarly, where a choice-of-law clause in a contract is sufficiently broad to encompass contract-related tort claims, the Court will honor the intent of the parties to choose the applicable law. See Hitachi Credit America Corp. v. Signet Bank, 166 F.3d 614 (4th Cir.1999). In the instant case, all three contracts at issue were duly executed by the parties and contained broad and enforceable choice-of-law provisions. First, the Stock Redemption Agreement states that the agreement "will be interpreted in accordance with the laws of the Commonwealth of Virginia." See Compl. Exh.1. Second, the Creditor's Subordination Agreement states that it, too, "shall be construed under and governed by the internal laws of the Commonwealth of Virginia." See Compl. Exh.2. Third, the Promissory Note at issue here states also that the Note and the "rights and obligations" of the parties "will be governed by and interpreted in accordance with the laws of the Commonwealth of Virginia (without regard to the conflict of law principles thereof)." See Compl. Exh.3. Each of the three agreements at issue unequivocally identifies Virginia law as the appropriate law governing any dispute between the parties. Thus, the parties have elected, by contract, to have the issues alleged in the complaint—whether sounding in contract or arising from a contract-related tort—decided under the laws of the Commonwealth of Virginia.

### III.   PLAINTIFF'S VARIOUS FRAUD CLAIMS (COUNTS I-V) FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Weiler brings various fraud claims because he is unsatisfied with the terms of the several contracts he negotiated with Defendants. Weary of numerous suits seeking recovery in fraud for alleged damages arising from the contractual relationship between parties, Virginia law has

recently evolved to strongly discourage such action.  Weiler's fraud claims fail to state a claim upon which relief may be granted under Virginia law.

### A.     Weiler's Fraud Claims Are Barred By The Economic Loss Doctrine

Where a plaintiff seeks to recover economic losses arising from a defendant's failure to perform a contractual obligation, the law of contracts, not torts, provides the exclusive remedy. Filak v. George, 267 Va. 612, 613, 594 S.E.2d 610, 618 (2004) citing Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 374 S.E.2d 55 (1988).  "To avoid turning every breach of contract in to a tort, however, we have consistently adhered to the rule that, in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract."  Dunn Construction Co., Inc. v. Cloney, 278 Va. 260, 682 S.E.2d 943 (2009) quoting Foreign Mission Rd. v. Wade, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991) (Internal citations omitted).  Thus, order to recover for fraud, the duty alleged to have been tortiously breached must be a separate common law duty and not a duty arising solely by virtue of a contract.  Augusta Mutual Ins. Co. v. Mason, 274 Va. 199, 206, 645 S.E.2d 290, 294 (2007); Princeton Woods, LLC v. PNC Bank, 2009 WL 3614983 (E.D. Va. 2009) (Dismissing plaintiff's tort claims for failure to allege facts giving rise to defendant's independent common law duty.)

In Autusta Mutual, a homeowner's house was damaged in a chimney fire.  The homeowner's insurance carrier refused to pay the claim and the homeowner sued the carrier for bad faith and breach of contract.  The insurance company cross claimed for fraud against the company (and its agent) hired by the carrier to inspect the homeowner's chimney prior to issuing the homeowner an insurance policy.  The trial court sustained demurrers of the inspection company and its agent and the carrier appealed.

- 7 -

The Virginia Supreme Court upheld dismissal of the carrier's fraud claims.  In doing so, it rejected the carrier's assertion that "a false representation of a material fact, constituting an inducement to the contract, on which [a party] had a right to rely" is always a ground for an action in damages.  Id. at 204, 645 S.E.2d at 293.  The Virginia Supreme Court concluded that the carrier failed to state a claim since it did not to demonstrate the existence of a duty apart from that arising by virtue of the agreement between the carrier and the inspection company.  Id. at 205, 645 S.E.2d at 293.

Here, the same analysis requires the same conclusion.  Weiler claims in Counts I, II, IV and V that he was induced to enter into the SRA and the Subordination Agreement because (1) Small allegedly promised Weiler that Arrowpoint would pay the Note; (2) Defendants allegedly told Weiler that so long as Arrowpoint made payments to the Bank on the Credit Facility it would permit payments to Weiler on the Note and (3) Weiler allegedly relied on concealed facts related to renewal of the Credit Facility.  Even if these dubious assertions are true, Augusta Mutual makes clear that it is insufficient to allege fraud in the absence of a common law duty that exists apart from the duty existing by virtue of contract.  Nowhere in Weiler's 56 page, 324 paragraph complaint does he allege the existence of any duty on the part of Arrowpoint, Arrowpoint International or Small other than contractual duties.  In the absence of such a duty, Counts I, II, IV and V must be dismissed.

### B.    Counts I And II Fail To Allege Actionable Fraudulent Concealment

In Counts I and II, Weiler claims to be the victim of concealment and deceit on the part of Defendants.  Essentially, Weiler alleges that Defendants concealed from him Arrowpoint's

new financial covenants with the Bank.[2]  Weiler claims the damages resulting from the concealment and deceit included (1) he entered into the SRA and surrendered his shares in Arrowpoint, (2) he was deprived of payments due under the Note and (3) he entered into the Subordination Agreement.  Compl. ¶¶155; 165.  Even if true and for a host of reasons, Counts I and II do not state a claim upon which relief may be granted.

>    1.   The Alleged Concealment Occurred After Weiler Executed The SRA

Weiler alleges deceit and concealment in Counts I and II.  The elements are essentially the same.  "Concealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud."  Allen Realty Corp. v. Holbert, 227 Va. 441, 450, 318 S.E.2d 592, 597 (1984) citing Clay v. Butler, 132 Va. 464, 474, 112 S.E.697, 700 (1922).  "Representations intended to convince another that an issue does not exist may constitute fraud where the other person relies on such representations to his detriment."  White v. Patocska, 589 F.Supp.2d 631, 642 (E.D. Va. 2008) citing Packard Norfolk, Inc. v. Miller, 198 Va. 557, 563, 95 S.E.2D 207 (1956).

Counts I and II assert Arrowpoint and Small concealed the financial covenants from Weiler causing him damages in part because it caused him to enter into the SRA and surrender his shares.  Compl. ¶¶155; 165.  However, the timing of his factual allegations contradicts this assertion.  Weiler entered into the SRA and surrendered his shares on August 11, 2008.  Compl. ¶47.  When he did so, he knew Arrowpoint and the Bank would perform their annual review of the Credit Facility in September and October 2008.  Compl. ¶¶49-50.   In September 2008, the annual review actually occurred.  Compl. ¶¶56; 87.

---

[2] Weiler also claims Arrowpoint and Small promised to make future payments on the Note.  This assertion also fails to state a claim upon which relief may be granted.  See Infra. at part D.

Thus, Weiler could not have relied on the alleged concealed fact – the new financial covenants – when he entered into the SRA in August 2008 since financial covenants were not even known to the Defendants until September 2008.  It is impossible that Weiler would have relied upon a concealment of facts not yet known even to Defendants.  Therefore, Weiler's claim that he entered into the SRA and surrendered his stock due to concealment must be dismissed.

2.  <u>Defendant's Had No Duty To Disclose The Financial Covenants And Weiler Failed To Investigate Fully</u>

The failure to disclose information is generally not actionable as fraudulent concealment in the absence of some duty to disclose.  A duty to disclose does not normally arise when parties are engaged in an arm's length transaction.  A duty may arise (1) if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist; or (2) if one party takes action which diverts the other party from making prudent investigations."  <u>White</u>, 589 F.Supp.2d at 642 <u>citing</u> <u>Bank of Montreal v. Signet Bank</u>, 193 F.3d 818, 829 (4th Cir. 1999).

Here, the parties to the contracts at issue here were clearly engaged in an arm's length transaction.  First, the SRA Weiler was advised in writing to seek his own independent counsel and expressly noted that the transaction being negotiated represented an "arm's length transaction."  Comp. ¶26.  Second, Weiler hired his own independent counsel before executing any of the agreements.  Comp. ¶30.  Third, the relationship between Weiler and Arrowpoint had allegedly grown contentious to the point where Arrowpoint allegedly issued Weiler "an ultimatum".  Comp. ¶32.  <u>See</u> <u>e.g.</u> <u>Id.</u> at 650.  (Concluding the transaction was an arm's length negotiation in part because the parties were not speaking terms.)  It cannot be seriously debated that the transaction here was at arm's length.

Weiler will no doubt assert that Arrowpoint and Small owed him a duty by virtue one of the exceptions listed above.  This is incorrect.  "Where one person seeks to hold another person liable for fraud, he must show that he relied on the representation of that person.  However, where the person makes 'his own investigation, whether complete or not, into the subject matter at hand' he may not say that he relied on the representations of another.  Id. at 642 quoting Harris v. Dunham, 203 Va. 760, 767, 127 S.E.2d 65 (1962).  In White, the buyer of a closely held corporation sued the majority shareholder and other shareholders of the corporation alleging, among other things, fraud by concealment. The allegations of concealment were numerous and analyzed separately by the court.  One of the buyer's allegations was that the corporation claimed it had good on-going client relationships and concealed that the truth was otherwise.  In dismissing this fraud claim on summary judgment, the court noted that the buyer did not ever ask the seller for permission to make direct contact with the clients.  The court concluded that failing to do so prevented the buyer from proving reliance necessary to make a claim of fraud.  Id. at 651.

Here, the same conclusion is warranted.  Before entering into the Subordination Agreement, Weiler knew Arrowpoint's payment on the Note could cease upon a default of the Credit Facility by Arrowpoint.  Compl ¶58.  Having reviewed this provision, Weiler set about to investigate what sort of a default would trigger cessation of payment on the Note.  Compl ¶¶57-69.  He alleges that his investigation was limited to inquiring of Defendants– parties opposite him in the transaction– their understanding of the new financial covenants and their affect on the Subordination Agreement.  As in White where the buyer never asked to speak with the clients, *Weiler never asked for a copy of the new financial covenants.*  His failure to do so makes it patently unreasonable for him to rely upon the representations of another.

- 11 -

Moreover, paragraph 9 of the Subordination Agreement expressly states that the Bank may revise the terms of the Credit Facility at any time and without Weiler's knowledge or approval.  Thus, even if the alleged concealment occurred, it would have been unreasonable to rely on the terms revealed since those terms were subject to modification at any time without Weiler's knowledge or consent.  Weiler cannot sustain this fraud claim in the absence or alleging reasonable reliance.  This he cannot do and his claims in Counts I and II must be dismissed.

### C.    Count III Does Not State A Claim For Constructive Fraud

In Count III, Weiler alleges he has been "constructively defrauded" by the alleged diversion of Arrowpoint's "assets, income, staff, use of occupied premises and business opportunities" to Arrowpoint International".  Compl. ¶179.  This does not state a claim for constructive fraud or any other cause of action under Virginia law.

The elements necessary to state a claim for fraud are (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.  "Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it."  Evaluation Research Corp. v. Alequin, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994) (Citations omitted).  None of the allegations contained in Count III come close to stating a claim for constructive fraud.  Instead, Weiler seems to suggest that Arrowpoint and Small owed him (and other creditors) a duty not to divert Arrowpoint's assets and opportunities to Arrowpoint International.  Even if this was true, and it is not, Weiler's claim fails to state a claim upon which relief may granted.

Arrowpoint and Arrowpoint International owe a duty to its shareholders.  See e.g. Berg & Berg Enterprises, LLC v. Boyle, 178 Cal.App.4th 1020, 1039, 100 Cal.Rptr.3d 875, 892 (Cal.App. 6 Dist.,2009) (stating the general rule that duty of a corporation is to the shareholders who own it; creditors are free to protect their interests by contract).   Weiler is not a shareholder he is a creditor; therefore, neither Arrowpoint nor Arrowpoint International are answerable to him to account for how it utilizes its assets and opportunities.  As an officer and director of Arrowpoint and Arrowpoint International, Small owes fiduciary obligations to Arrowpoint and Arrowpoint International and not to creditors like Weiler.  Va. Code §13.1-690.  Count III fails to state a claim upon which relief may be granted and must be dismissed.

### D.    Count IV Fails To Allege An Actionable Fraud Claim

#### 1.    Count IV Relies On Statements Of Future Events

 "The general rule is that fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events."  Soble v. Herman, 175 Va. 489, 500, 9 S.E.2d 459, 464 (1940) citing O'Dell v. Appalachian Corp., 153 Va. 283, 149 S.E. 487 (1929) (rejecting fraud claim based in part on unfulfilled promise to pay a future debt); Lumbermen's Underwriting Alliance v. Dave's Cabinet, Inc., 258 Va. 377, 382, 520 S.E.2d 362, 365 (1999) (statement that insurance policy requirements would eventually reduce the cost of workers' compensation insurance coverage for plaintiff was merely an unfulfilled promise as to a future event and not a statement concerning an existing or pre-existing fact).

Weiler complains that Arrowpoint induced him to enter into the SRA in August 2008 by promising to make payments on the Note.  The Note did not mature until February 2009.  Thus, the unfulfilled promise complained of clearly relates to a future event and Count IV fails to state a claim upon which relief may be granted.

2.   <u>It Is Implausible That Arrowpoint Would Have No Intention To Pay The Note</u>

Weiler attempts to dodge the reality that the alleged misrepresentation in Count IV is clearly an unfulfilled promise as to a future event by alleging Arrowpoint had no intention of paying the Note when it made the misrepresentation.  See <u>e.g.</u> <u>Patrick v. Summers</u>, 235 Va. 452, 454-455, 369 S.E.2d 162, 164 (1988) (noting that an action for fraud may be "predicated on promises which are made with a present intention not to perform them, or on promises made without any intention to perform them" but reversing judgment in favor of plaintiff.)  However, Weiler's allegation is wholly implausible and should be rejected.

The United States Supreme Court recently articulated the standard of review required by the trial court in reviewing a motion to dismiss.  In <u>Iqbal</u>, the Supreme Court stated:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."

<u>Iqbal</u>, 129 S.Ct. at 1949. (Internal quotations and citations omitted).

Here, Weiler claims that Arrowpoint had no intention of paying the Note when Small promised that Arrowpoint would.  Such an allegation is implausible. At the same time it executed the Note, Arrowpoint made significant cash payment in the amount of $650,000 and released Weiler of debt to Arrowpoint of over $300,000.  Arrowpoint is presently making payments on the Note.  Moreover, non-payment of the Note potentially gives rise to significant rights to Weiler including, for example, an elevated default interest rate and attorneys' fees incurred in collecting on the unpaid obligation.

In determining whether the complaint states a plausible claim for relief, this Court must "draw on its judicial experience and common sense." Id. It is implausible that Arrowpoint would have had no intention to pay Weiler when it executed the Note. If it did not wish to pay Weiler, it would have never agreed to do so. Common sense suggests Arrowpoint's default of its financial covenants resulting in its failure to pay the Note resulted from deteriorating market conditions that gripped financial world financial markets in the fall of 2008. Indeed, many larger and more storied corporations than Arrowpoint suffered the crippling effect of the stock market crash of the fall of 2008. This Court should conclude that the allegations in Count IV that Arrowpoint never intended to pay the Note are implausible and should accordingly dismiss Count IV.

       3.   <u>Reliance On The Alleged Promises Are Facially Implausible</u>

In Count IV, Weiler claims Arrowpoint and Small fraudulently induced him to enter into the SRA and relinquish his shares by promising that Arrowpoint would make all future payments under the Note. Compl. ¶183. As noted above, reliance on an alleged misrepresentation is an element of any fraud claim under Virginia law. However, reliance on any representations of another must be reasonable to state a claim for fraud. <u>Hitachi Credit America Corp. v. Signet Bank</u>, 166 F.3d 614, 629 (4th Cir. 1999).

In Count IV, Weiler claims that Arrowpoint and Small represented that Arrowpoint would make future payments under the Note and that, supposedly in reliance on those representations, Weiler surrendered his shares in Arrowpoint. For a number of reasons, such a claim stops well short of the line between possibility and plausibility. First, it ignores the fact that immediately upon executing the SRA Weiler received significant compensation for his shares in addition to the Note. Second, it ignores that Weiler apparently wished to assist a

candidate for higher office and that Arrowpoint insisted he devote his full-time to his duties as the second ranking officer in Arrowpoint thus providing a strong motive for Weiler to immediately want out of Arrowpoint.  Third, he apparently had concerns about Arrowpoint's financial condition (and therefore its ability in the future to pay on the Note) shortly before he signed the SRA and surrendered his shares.  See Compl. ¶162.  Finally and most importantly, it ignores the fact that Weiler stated no less than three times in the SRA that he was relying on no representations other than those contained in the SRA.  See SRA ¶¶3(c); 3(e); and 10(e).

Is it plausible that Weiler truly relied on Small's supposed promise that Arrowpoint would pay the Note that actually pushed Weiler over the edge and convinced him to sign the SRA, or did he agree to the terms because he was to receive $4 million nearly a quarter of which the very day he signed the SRA?  Is it plausible that Weiler would be relying Small's alleged promise when he disavowed any such reliance three times in the SRA?  Drawing on its significant judicial experience and sound common sense, the Court should conclude that the allegations in Count IV are implausible and dismiss it.

**E.     Count V Fails To Allege An Actionable Constructive Fraud Claim**

In Count V, Weiler contends Arrowpoint and Small made negligent misrepresentations (1) that Arrowpoint would make all of its payments scheduled under the Note and (2) regarding Arrowpoint's net worth and income in the covenants of the loan agreement with the Bank. Compl. ¶193. Weiler's contentions do not state a claim upon which relief may be granted.

1.   Promises Of Future Action Will Not Support A Claim Of Constructive Fraud

"The elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the

misrepresentation.  Prospect Development Co., Inc. v. Bershader, 258 Va. 75, 86, 515 S.E.2d

291, 297 (1999) quoting Blair Constr., Inc. v. Weatherford, 253 Va. 343, 346-7, 485 S.E.2d 137,

138-9 (1997).  "*Under no circumstances, however, will a promise of a future action support a*

*claim of constructive fraud.*"  Supervalu, Inc. v. Johnson, 276 Va. 356, 368, 666 S.E.2d 335, 342

(2008) (Emphasis supplied.)

Here, the first part of Weiler's claim in Count V clearly relates to a future action –

making future scheduled payments of the Note.  Thus, Weiler's claim that Arrowpoint and Small

made negligent misrepresentations that Arrowpoint would make all of its payments scheduled

under the Note must be dismissed.  Virginia law supports no such claim.

2.  Arrowpoint's Loan Covenants With The Bank Cannot Support A Claim Of
Constructive Fraud By Weiler

"A finding of either actual or constructive fraud requires clear and convincing evidence

that one has represented as true what is really false, in such a way as to induce a reasonable

person to believe it, with the intent that the person will act upon this representation."  Evaluation

Research Corp. v. Alequin, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994).

The gist of Weiler's second claim in Count V is that Arrowpoint and Small made

negligent misrepresentations *to the Bank* regarding Arrowpoint's net worth and income in the

financial covenants of the loan agreement between Arrowpoint and the Bank.  Compl. ¶¶ 193,

204, 205, 207.  Weiler does not and cannot allege that *he* relied on or was induced to believe

Arrowpoint's allegedly unattainable net worth and income covenants.  Those representations

were made by Arrowpoint to the bank.  Therefore, Count V fails to state a claim upon which

relief may be granted.

- 17 -

## II.    WEILER'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED

### A.   Weiler's Right To Bring Suit Fails To Satisfy A Condition Precedent

In Count VI, Weiler alleges Arrowpoint is in default on the Note because it failed to make payments between February 2008 and December 2009.  Weiler's claim must be dismissed because he has failed to allege (and cannot allege) he satisfied a condition precedent to suing Arrowpoint for default of the Note – i.e. full satisfaction of the Credit Facility between Arrowpoint and the Bank.

Under Virginia law "[a] party seeking to recover on a contract right must allege and prove performance of any express conditions precedent upon which his right of recovery depends." Lerner v. Gudelsky Co., 230 Va. 124, 132, 334 S.E.2d 579, 584 (1985).  In Lerner, buyer agreed to purchase certain real estate on condition that a municipality approve certain permits.  When the municipality refused the permits, the buyer sued to recover its earnest money deposit.  The trial court denied the buyer's request and the court reversed holding that the municipality's refusal to grant the permits constituted a "failure of a condition precedent upon which the buyer's obligation to perform was dependent." Id. at 133, S.E.2d at 585.

Here, Weiler expressly agreed that his rights to payment under the Note are "subordinated"[3] to the Credit Facility between Arrowpoint and the Bank.  Note ¶18.  The Bank determined Arrowpoint in default of the Credit Facility and instructed Arrowpoint not to make payments to Weiler.  Compl. ¶¶ 87; 92.  Moreover, the Subordination Agreement explicitly forbids Weiler from suing Arrowpoint on the Note while the Credit Facility is in place.  Subordination Agreement ¶6.  This language creates an express condition precedent to Weiler's right to sue Arrowpoint for default of the Note.  The Credit Facility is still in place; therefore,

---

[3] Subordinate is defined as "subject to  or under the authority of a superior."  Dictionary.com Unabridged.

Count VI fails to state a claim since the condition precedent to Weiler's right to sue Arrowpoint has not been satisfied.

Rather than allege he has satisfied this condition precedent to his right to sue, Weiler attempts to side-step this impediment to his claim by asserting that the Bank failed to comply with the notice provisions of the Subordination Agreement.  Compl. ¶217.  This is wrong for the reasons stated in the Memorandum in Support of Motion to Dismiss filed by the Bank at Part II. Count VI must be dismissed.

### B.  Arrowpoint Is Not In Default Of Its Payment Obligation

Assuming arguendo that full satisfaction of the Credit Facility is not a condition precedent to Weiler's right to sue Arrowpoint for payment of the Note, the Court should dismiss Count VI because Weiler has failed to allege a valid default of the Note.  Again, Weiler alleges Arrowpoint failed to make certain payments of the Note.  But Weiler's right to payment under the Note is subordinated to the Credit Facility with the Bank.  Note ¶18.  The Bank instructed Arrowpoint not to make the payments to Weiler.  Compl. ¶¶ 87; 92.  Thus, Arrowpoint did not default on its payment obligations under the Note and no default occurred since Weiler's right to payment is subject to the Bank's rights pursuant to the Credit Facility.  Stated differently, Arrowpoint's alleged nonpayment default is excused by the Bank's explicit instructions to Arrowpoint not to make those payments of the Note and Arrowpoint is constrained by the Bank's superior debt obligation to heed these instructions.  Under the circumstances, Weiler has failed to allege a breach of the Note and Count VI should be dismissed.

### III.     WEILER'S CONSPIRACY CLAIM MUST BE DISMISSED

#### A.  Plaintiff Has Not Alleged Proper Damages To State A Claim Under Virginia's Business Conspiracy Statute

In Virginia any "two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of…willfully and maliciously injuring another in his reputation, trade, business or profession" can be found civilly liable.  Virginia Code §18.2-499. Weiler claims that the Defendants fraudulently induced him to transfer his "business" to Arrowpoint.  Compl. ¶¶235-238.  But Weiler's true claim is that the Defendants harmed him *personally* and *individually* and that his personal finances have been damaged by any alleged conspiracy between the parties.  Such a claim alleges injury to Weiler not to his reputation, trade, business or profession and, as such, is not actionable under Virginia's business conspiracy statute. See Moore v. Allied Chem. Corp., 480 F. Supp. 364 (E.D. Val 1979); Peterson v. Cooley, 142 F.3d 181 (4th Cir. 1998); Nationwide Mut. Fire Ins. Co. v. Jones, 577 F.Supp. 968, 970 (W.D.Va.1984).

#### B.  Plaintiff Has Failed To Allege An Agreement

To survive a motion to dismiss, the plaintiff must allege that the co-conspirators "combined together to effect a 'preconceived plan and unity of design and purpose, for the *common design in the essence of the conspiracy.*'"  Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (Emphasis added).  A business conspiracy claim requires showing of the existence of an agreement for an unlawful purpose. See Chisolm v. TranSouth Fin. Corp., 194 F.R.D. 538, 549 (E.D. Va. 2000).  Further, because Weiler's business conspiracy claim to deprive him of his shares in Arrowpoint sounds in fraud, it must comply with the heightened pleading requirements of Rule 9(b). See Harrison v. Westinghouse Savannah River Co., 176 F. 3d 776, 784 (4th Cir. 1999).  At a minimum, this

requires the Plaintiff to identify the time, place and nature of the agreement and the misrepresentations. Stone Castle Fin,, Inc. v. Friedman, Billings, Ramsey & Co., 191 F. Supp. 2d 652, 662 (E.D. Va. 2002).

Instead of any specific allegations evidencing a common scheme or purpose, Weiler repeatedly states throughout the Complaint conclusory allegations like, "Defendants Small and Arrowpoint failed to disclose to Plaintiff Weiler either that each of them intended that Weiler would not be paid under his Promissory Note or that, in fact, Weiler would not be paid under the note." Compl.¶¶28, 40-41, 46, 57, 61, 63, 65-71, 96, 110, 120-127.  These assertions fail to allege a "combining together" a "preconceived plan and unity of design and purpose" and/or a "common design [as] the essence of a conspiracy."  Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003).  Indeed, aside from ¶110 of the complaint where Weiler uses the phrase "conspired to negotiate" (which, at best, entertains a conspiracy to enter into a negotiation) there is no other allegation which even references a conspiracy and certainly no allegations that meet the heightened pleading requirements of Rule 9(b) Fed. R. Civ. Pro. as amplified in  Bell Atlantic Corp, v. Twombly, 550 U.S. 544 (2007). Accordingly, Plaintiff's business conspiracy claim must be dismissed.

### C.  Weiler Failed To Allege Legal Malice Or A Plausible Motive For A Conspiracy

A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means. Werth v. Fire Adjust. Bureau, 160 Va. 845, 855, 171 S.E. 255, 259 (1933) cert. denied 290 U.S. 659 (1933). Moreover, "there can be no conspiracy to do an act which the law allows." Hechler Chevrolet, Inc. v. General Motors Corp., 230 Va. 396, 337 S.E.2d 744, 748 (1985).  Plaintiff must allege that at least one conspirator acted

with legal malice. <u>Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.</u>, 108 F.3d 522, 527 (4th Cir.1997).

Weiler has not made any allegation that the Defendants acted with legal malice towards him. Nevertheless, even if this Court finds that Plaintiff has properly alleged that Arrowpoint the Bank conspired together to secretly heighten the capital requirements of the credit facility, Plaintiff has not, and indeed cannot explain that kind of business decision was intended to harm Plaintiff specifically.

Further Plaintiff can give no reason why Arrowpoint would have any incentive to purposefully inflate the financial requirements imposed on it to borrow money in a difficult economy merely to hurt Weiler. This Court is not required to accept such an absurd conclusion. <u>See</u> <u>e.g.</u> <u>Robertson v. First Union Nat. Bank,</u> 350 S.C. 339, 565 S.E.2d 309 (S.C. App. 2002) ("we can think of no reason why a Bank would make it a practice to intentionally make loans for an amount in excess of the collateral's value and risk substantial losses in the event of a default"); <u>See</u> <u>also</u>, <u>Petra Int'l Banking Corp. v. First American Bank of Virginia,</u> 758 F.Supp. 1120 (E.D.Va. 1991). Plaintiff's claim must be dismissed as he is unable plead a conspiracy that is at least plausible on its face.

## IV. WEILER'S <u>QUANTUM</u> <u>MERUIT</u> AND UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED

<u>Quantum</u> <u>meruit</u> recovery is based upon an implied contract to pay the reasonable value of services rendered. <u>Mongold v. Woods</u>, 278 Va. 196, 677 S.E.2d 288 (2009). Similarly, unjust enrichment claims arise from the recognized Virginia principle that "an equitable claim may lie where an implied contract or an otherwise unenforceable contract does not exist between the parties." <u>Royer v. Board of County Supervisors</u>, 176 Va. 268, 10 S.E.2d 876 (1940); <u>Nedrich v. Jones</u>, 245 Va. 465, 429 S.E.2d 201 (1993); <u>See also</u>, <u>Kern v. Freed Co.</u>, 224 Va. 678 (1983).

However, in either the case of unjust enrichment or that of <u>quantum</u> <u>meruit</u>, if there is a valid,

legally enforceable and express agreement between the parties, the "law will not imply a contract

in contravention thereof."  <u>Ellis & Myers Lumber Co. v. Hubbard</u>, 123 Va. 481 (1918); <u>Royer v.</u>

<u>Bd. of County Supervisors</u>, 176 Va. 268 (1940); <u>Nedrich v. Jones</u>, 245 Va. 465, 477, 429 S.E.2d

201, 207 (1993)(holding that where an express contract exists regarding the subject matter, there

is no need to imply a contract because the parties have already negotiated their agreement).

In his complaint, Weiler makes numerous claims and assertions that reference a valid and

enforceable written agreement between the parties covering the subject matter of this suit. See

Compl. ¶¶22, 23, 26, 38, 47, 49, 53, 56, 62-69, 90, 95, 97, 100, 120, 124, 210-218.  In fact, at

issue in this suit are no less than three agreements which expressly govern the rights and

obligations of the parties with respect to the matters alleged in this suit. <u>See</u> Compl. Exh.1-3.

Moreover, nowhere in the complaint does Weiler even allege an alternative of theory of recovery

whereby the contracts can or should be found to be invalid or otherwise unenforceable.  <u>See</u>

<u>Lemon v. Hufford</u>, 23 Cir. CL07590, 77 Va. Cir. 386 (2009) (requiring alternative theories to be

properly pled); <u>See generally</u>, <u>Ellis v. Hubbard</u>, 123 Va. 481, 501 (1918).

Accordingly, under established Virginia law, "where parties have reduced their contract

to a writing which imposes a legal obligation in clear and explicit terms, the writing shall be the

sole memorial of that contract, and it is conclusively presumed that the writing contains the

whole contract." <u>Coal River Collieries v. Eureka Coal & Wood Co.</u>, 144 Va. 263, 283, 132 S.E.

337, 343 (1926). "The writing alone is the evidence of the contract and no other will be

received." <u>Id.</u> (holding that "a contract, reduced to writing in explicit terms, is presumed [a]

whole contract, and parol evidence will not be received")(also holding that "in no jurisdiction is

- 23 -

the parol evidence rule more often invoked and more strictly adhered to in its integrity, than in

Virginia"); <u>See also</u>, Virginia Code  § 8.2-202.

Because Weiler alleges no alternate theory of recovery outside the four corners of the

three express, valid and enforceable agreements attached to his own complaint, this Court should

deny Plaintiff's claims based on theories of implied contracts to pay reasonable values.  <u>Royer v.</u>

<u>Board of County Supervisors</u>, 176 Va. 268, 10 S.E.2d 876 (1940).  Thus, this Court should

dismiss Plaintiff's <u>quantum</u> <u>meruit</u> claim (Count IX) and Plaintiff's unjust enrichment claim

(Count X).

## V.  WEILER'S DECLARATORY JUDGMENT AND REFORMATION CLAIMS MUST BE DISMISSED

### A.    The Non Solicitation Agreement Is Lawful

In Count XI, Weiler seeks a declaration that a restrictive covenant in the SRA is an

invalid restraint on trade.  Because the restrictive covenant is valid on its face, the Court should

dismiss Weiler's request for relief.

#### 1.  <u>Legal Standard For Restrictive Covenants</u>

The standards for reviewing restrictive covenants in Virginia are well established, and

were summarized by the Virginia Supreme Court in <u>Omniplex World Services Corp. v. US</u>

<u>Investigations Services</u>, 270 Va. 246, 249 (2005) (internal citations omitted):

> "A non-competition agreement between an employer and an employee will be enforced if the contract is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy. …Whether the covenant not to compete is enforceable is a question of law."[4]

---

[4]    Non-solicitation covenants and non-competition covenants are subject to similar scrutiny.  <u>See</u>, <u>e.g.</u>, <u>Strategic Resources, Inc. v. Nevin</u>, 2005 WL 314394, 2005 U.S. Dist. Lexis 30985 (E.D. Va. 2005).

The Virginia Supreme Court has noted that the scope of permissible restraint is more limited as between an employer and employee than a restrictive covenant negotiated between a buyer and a seller.  Richardson v. Paxton Co., 203 Va. 790, 795, 127 S.E.2d 113, 117 (1962).

## 2.   The Non Solicitation Covenants In The SRA Are Lawful

The SRA contains the following provisions (collectively the "Restrictive Covenants"):

(c) No Solicit/No Hire.  From the date hereof and through and including July 31, 2011, [Weiler] will not, directly or indirectly, for on behalf of [Weiler] or any person or entity other than [Arrowpoint]:

(i) solicit for business, which business is competitive with that of [Arrowpoint], any customer or potential customer of [Arrowpoint] (for purposes of this Agreement "customer" means only the office or project and the personnel that are assigned to such office.  It specifically does not include the entire U.S. Department of Defense (DoD) or large program organizations within the DoD).

(ii) participate in competition for the award of or perform services in connection with (A) any contract, task order, or program for which [Arrowpoint] is competing, or (B) any contract, task order or program that would replace, succeed supersede, reduce or diminish [Arrowpoint's] work under the contract, task order or program;

(iii) solicit for business, which business is competitive with that of [Arrowpoint], any vendor, consultant, collaborator, agent or contractor of [Arrowpoint], the effect of which is to cause such person or entity to end or materially reduce its business relationship with [Arrowpoint];

(iv) solicit, recruit, induce, or attempt to solicit, recruit or induce any [Arrowpoint] employee to leave his or her employment with [Arrowpoint]; or

(v) hire or attempt to hire any former [Arrowpoint] employee during the 12 month period after such person's employment with [Arrowpoint] has ended.

SRA at p. 4; ¶8.

The complaint contends Restrictive Covenants are unlawful since (1) they are against public policy for restrict competition for "Government contracts" (Compl. ¶256-7); (2) on their face, the "any customer" language would include every Federal agency and all Government contractors (Compl. ¶258); (3) there is no territorial limits to the Restrictive Covenants (Compl.

¶259) and (4) the prohibition on solicitation of business from "any customer or potential customer" is unenforceable under Virginia law (Compl. ¶260).  Weiler is wrong.

First, it is not against public policy to restrict competition for "Government contracts." Counsel is unaware of any "public policy" or precedent changing the common law specific to "Government contracts" that would prohibit Arrowpoint from protecting its legitimate interests in the manner set out in the Restrictive Covenants.

Second, Weiler's contention that the "any customer" language would include every Federal agency and all Government contractors ignores the plain language of the SRA at ¶8(c)(i) which reads, "for purposes of this Agreement "customer" means only the office or project and the personnel that are assigned to such office.  *It specifically does not include the entire U.S. Department of Defense (DoD) or large program organizations within the DoD*."  [Emphasis supplied.]  Therefore, Weiler would have this Court ignore language obviously inserted (at Weiler's insistence) specifically to *narrow* the breadth of the Restrictive Covenants.

Third, the lack of territorial limitations is acceptable under the circumstances since it is implicitly limited to the geographic areas in which Arrowpoint's customers are located.   The Restrictive Covenants here do not prohibit Weiler from any particular employment which would require a geographic limitation to be reasonable.  Instead, the Restrictive Covenants prohibit solicitation of Arrowpoint's customers.  As such, the geographical scope is necessarily and appropriately limited to wherever Arrowpoint's customers are located.  Such a restraint is reasonable under the circumstances especially given Weiler's position within Arrowpoint.  See e.g. Devnew v. Flagship Group, Ltd., 75 Va. Cir. 436, 2006 WL 6345732 (2006) (finding enforceable a non-solicitation of customers provision without territorial limitation).

Fourth, it is true Virginia courts have struck down restrictive covenants prohibiting an employee from working *in any capacity* for a competitor.  See e.g. Omniplex, Supra (striking down non-competition provision because it was not limited to employment in competition with former employer).  But here there is no such unlawful restriction on trade.  Paragraph 8(c) only precludes Weiler from soliciting Arrowpoint's customers the business of such customer provided to it by Arrowpoint.  This does not preclude Weiler from working anywhere in any capacity so long as he does not solicit Arrowpoint's customers for the business that Arrowpoint does for its customers.  It does not prohibit Weiler from working for another company and soliciting Arrowpoint's customers for services Arrowpoint does not provide its customers (e.g. janitorial services or library sciences services).  See Lanmark Technology, Inc. v. Canales, 454 F.Supp.2d 524, 530 (E.D. Va. 2006) (striking down restrictive covenant where it unreasonably restricted employment of former employee).

This sort of covenant is "necessary to protect the legitimate interests of" Arrowpoint.  See Foti v. Cook, 220 Va. 800, 807, 263 S.E.2d 430, 434 (1980).  Weiler owned nearly one-half of the shares of Arrowpoint, was its number two officer engaged in marketing and sales, and supposedly "multiplied Arrowpoint's business by 1700%" during his five years there."  Compl. ¶¶ 10-13.  In Foti, the court noted that in determining whether a restrictive covenant is unduly oppressive, "it is relevant to consider the parties involved, their respective positions, and the circumstances of the transaction."  Id. at 806, 263 S.E.2d at 433.  The court noted that the parties were senior partners with equal footing at the bargaining table.  Here, the parties were similarly situated when negotiating the SRA.  The relationship between the parties was not simply employer and employee, and this Court should keep in this in mind when reviewing the Restrictive Covenants.

- 27 -

The complaint's request that the Court strike down the Restrictive Covenants should be dismissed.

**B.     Weiler Is Not Entitled To Other The Declarations Or Reformation Sought**

In Counts XI, XII and XIII, Weiler seeks numerous declarations and reformations few of which relate to Arrowpoint.  In addition to seeking to strike the Restrictive Covenants, the declarations and reformation sought by Weiler relevant to Arrowpoint include (1) a declaration that there was no default of the financial covenants of the Credit Facility that would have excused payment to him by Arrowpoint (Compl. ¶287); (2) that Arrowpoint not be excused from nonpayment of the Note (Compl. ¶303(c)); (3) that the Note and Subordination Agreement be read to afford Weiler a "judicial remedy" in the event of nonpayment of the Note; and (4) reformation of the Note and Subordination Agreement so that only nonpayment of the Credit Facility would constitute a default by Arrowpoint.  None of these claims state a claim upon which relief may be granted.

1.  <u>Weiler Is Not Entitled To A Declaration That There Was No Default Of The Financial Covenants</u>

Under the Subordination Agreement Weiler agreed:

"[Weiler] agrees to recognize any such claim and demand of Bank, on account of any such asserted default upon the [Credit Facility] for [Weiler] to cease receiving and retaining such payments upon the [Note], all without investigation by [Weiler] as to the reason for any action taken by Bank or the particulars of any default or demand for payment by Bank upon the [Credit Line]."

Subordination Agreement at ¶6.  As stated above in Part II, Weiler has agreed to accept the Bank's claims that Arrowpoint is in default of the terms of the Credit Facility.  He is not permitted to investigate why the Bank declared a default so long as the Credit Line outstanding.  Thus, a condition precedent to Weiler's seeking an inquiry into the Bank's determination of default by Arrowpoint has not been satisfied and this claim must be dismissed.

- 28 -

2.  <u>Weiler Is Not Entitled To A Declaration That Arrowpoint Is Not Excused From Nonpayment Of The Note</u>

Weiler's claim here ignores that Arrowpoint is presently making monthly payments on the Note beginning in December 2009 now that the Bank has granted Arrowpoint permission to do so.  Once Arrowpoint has made all the payments it believes are owed to him, Weiler may have a claim for any alleged remaining deficiency.  At this point, Weiler's claims are premature and a waste of judicial resources.  Weiler's request for a declaration in this regard should be dismissed.

3.  <u>Weiler Is Not Entitled To A Declaration That The Note And Subordination Agreement Be Read To Afford Weiler A "Judicial Remedy" In The Event Of Nonpayment Of The Note</u>

The contracts at issue in this case are valid and binding.  Weiler is unsatisfied with his remedies but that does not provide justification for the remedy sought here.  This Court should reject Weiler's invitation to rewrite the contracts in this case.  <u>See</u> <u>e.g.</u> <u>L&E Corp. v. Days Inn of America, Inc.</u>, 992 F.2d 55, 58 (4th Cir. 1993) (vacating injunction issued by trial court where plain meaning of contracts disregarded.)  Here, Weiler has "judicial remedies."  He is simply unsatisfied with them.  This claim should be dismissed.

4.  <u>Weiler Is Not Entitled To Reformation</u>

Weiler is not entitled to reformation for the reasons articulated by the Bank at Part V of its Memorandum in Support of Motion to Dismiss.

## <u>CONCLUSION</u>

For the reasons stated herein, Defendants Arrowpoint Corporation, Arrowpoint International and Chrystle Small requests that the Court grant their Motion, dismiss the Complaint with prejudice, and award Defendants their costs and attorneys' fees incurred.

ARROWPOINT CORPORATION,
ARROWPOINT INTERNATIONAL
and CHRYSTLE SMALL


/s/ Douglas R. Kay
_____
Douglas R. Kay, VSB No. 35468
dkay@bhnklaw.com
BRIGLIA HUNDLEY NUTTALL & KAY, PC
1921 Gallows Road, Suite 750
Vienna, VA 22182
Telephone: (703) 883-0880
Facsimile: (703) 883-0899

Counsel for Arrowpoint Corporation,
Arrowpoint International and Chrystle Small

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of March, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

John D. Quinn, Esquire
Stephen Sale, Esquire
SALE & QUINN, P.C.
910 Sixteenth Street, N.W., Fifth Floor
Washington, D.C. 20006
202.883.4170 (phone)
202.887.5137(fax)
         Counsel for the Plaintiff

And sent to the foregoing via electronic mail to:

Robert A. Angle, VSB No. 37691
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
804.697.1200 (phone)
804.697.1339 (fax)

         Counsel for Virginia Commerce Bank and
         Jeffrey Satterly

                              /s/ Douglas R. Kay
                              _____
                              Douglas R. Kay, VSB No. 35468
                              dkay@bhnklaw.com
                              BRIGLIA HUNDLEY NUTTALL & KAY, PC
                              1921 Gallows Road, Suite 750
                              Vienna, VA 22182
                              Telephone: (703) 883-0880
                              Facsimile: (703) 883-0899

                              Counsel for Arrowpoint Corporation,
                              Arrowpoint International and Chrystle Small

- 31 -