IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| TODD A. WEILER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:10-cv-157-TSE-JFA |
| | ) |
| ARROWPOINT CORPORATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### VIRGINIA COMMERCE BANK AND JEFFERY SATTERLY'S
### REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO STRIKE
### EXPERT REPORT AND EXCLUDE PLAINTIFF'S EXPERT

Defendants Virginia Commerce Bank and its employee, Jeffrey Satterly (collectively, the "Bank"), by counsel, submit this Reply Memorandum in further support of their Motion to Strike the Expert Report of Lawrence Schwartz ("Schwartz") [Docket No. 191] and to exclude Schwartz from testifying at trial.

#### INTRODUCTION

As is clear from his Memorandum of Law in Opposition to the Bank's Motion to Strike (the "Opposition") [Docket No. 208], Plaintiff Todd A. Weiler ("Weiler") wants to turn a basic breach of contract into a battle of the experts about how the contracts should be construed. This is not the proper subject of expert testimony and would invade the province of the Court and the jury. What is more, the expert report of Lawrence Schwartz (the "Schwartz Report") fails to comply with the basic requirements of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Thus, as explained below and in the Bank's opening memorandum, the Schwartz Report should be stricken and he should be precluded from testifying at trial.

**ARGUMENT**

**I. The Court's July 2 Order does not relieve Weiler from having to comply with Fed. R. Civ. P. 26, Fed. R. Evid. 702, or well-established case law.**

At the outset of his Opposition, Weiler raises several threshold defenses that, while completely meritless, must be addressed briefly.

Weiler first argues that the Bank is somehow precluded from challenging Schwartz's Report based on the Court's July 2, 2010 Order [Docket No. 157]. The Court's Order merely granted Weiler's motion for leave to designate an expert witness on "banking and finance issues" after the close of discovery. [Docket Nos. 131, 132]. It did not address the substance of the yet-to-be-made expert disclosures or relieve Weiler (and his expert) of having to comply with the rules governing such experts, *i.e.,* Fed. R. Civ. P. 26(a)(2)(B) and Fed. R. Evid. 702. Regardless of the Court's Order, Weiler's designation of Schwartz – just like all expert disclosures – had to comply with these Rules. In granting Weiler leave to make his expert disclosures, the Court certainly could not have tested (and did not test) the validity of Schwartz's Report under these Rules because the disclosures had not yet been made. Thus, the Court's Order did not "pre-approve" Schwartz's Report and does not preclude the Bank from challenging the Report now.

Weiler also argues that the Bank somehow waived its right to contest Schwartz's opinions because the Bank failed to object to Weiler's motion for leave to designate such an expert after the close of discovery. Of course, as previously stated, the Bank could not have moved to strike Schwartz's opinions under Fed. R. Civ. P. 26(a)(2)(B) and Fed. R. Evid. 702 at the time Weiler filed his motion for leave because the opinions had not yet been disclosed. Moreover, at the time that Weiler filed his motion, there were no claims asserted against the Bank and the Bank was not a party to the case, so it had no reason or

basis for objecting to Weiler's motion. Indeed, had the Bank filed an opposition, Weiler most certainly would have moved to strike the opposition, arguing that the Bank was no longer a party to the case and thus had no standing to object to his motion. *See, e.g.*, Docket Nos. 88, 139 (Weiler's motion to strike Bank pleadings). Weiler cannot take the opposite position now.

In short, Weiler cannot rely upon the Court's July 2 Order to avoid scrutiny of Schwartz's Report or prevent the Bank from challenging that report under Fed. R. Civ. P. 26(a)(2)(B) and Fed. R. Evid. 702.

## II. Schwartz's opinions are improper because the Subordination Agreement is not ambiguous, and its "default" term is not a term of art.

Weiler argues that Schwartz's opinions will assist the trier of fact "because so many critical terms [of the Subordination Agreement] are undefined, and thus ambiguous . . . ." Opposition, p. 13. Weiler then focuses on the default provision of Subordination Agreement, claiming that "[t]he parties have widely divergent views of default under the [Subordination Agreement]" (*Id*., p. 14), thus justifying expert testimony on contract interpretation. This argument is wrong for several reasons.

First, Weiler misconstrues basic contract law in Virginia. It is well settled that "[c]ontracts are not rendered ambiguous merely because the parties disagree as to the meaning of the language employed by them in expressing their agreement." *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984). Likewise, just because the term "default" in the Subordination Agreement is not specifically defined does not render it ambiguous. It is for the Court to determine whether the default provision of the Subordination Agreement is ambiguous. *See Wilson*, 227 Va. at 187, 313 S.E.2d at 398 ("whether an agreement is ambiguous is not one of fact but one of law, and the function

of the court is to construe the contract made by the parties, not to make a contract for them."). Here, the Court has not determined the term default as used in the Subordination Agreement is ambiguous, as Weiler argues. Hence, Schwartz's opinions are improper and inadmissible on this basis. *See, e.g., Hartzler v. Wiley*, 277 F. Supp. 2d 1114, 1117 (D. Kan. 2003) (holding that expert testimony on contract interpretation is admissible if court determines contract to be ambiguous).

Even assuming for argument that the Court somehow finds the term "default" ambiguous as used in the Subordination Agreement, the jury should determine its meaning based on parol evidence of the parties' intent. *See Lenders Fin. Corp. v. Talton*, 249 Va. 182, 190, 455 S.E.2d 232, 237 (1995) ("The intention of the parties as expressed by them in the words they have used governs contract construction …"). Schwartz is not a party to the Subordination Agreement and was not involved in its negotiation. Hence, his opinions as to his interpretation of the Subordination Agreement would not assist the jury and, to the contrary, are likely to confuse the jury and unduly influence the jury to the prejudice of the Defendants.[1]

Schwartz's opinions are also improper because they, in effect, assess the credibility of competing testimony. Weiler's interpretation of the default term of the Subordination Agreement is based on the alleged conversation between him and Jeffrey Satterly ("Satterly") on October 15, 2008 (the same day that Weiler executed the Subordination Agreement), during which Satterly purportedly assured Weiler that he

---

[1] Weiler tries to save Schwartz's Report by arguing that the term 'default' is a term of art, and thus subject to expert testimony. However, Weiler offers no authority supporting his argument that this is a term of art, and nothing in the Subordination Agreement suggests that "default" was used as a term of art.

would receive timely payments under the Note so long as Arrowpoint made all of its payments owed to the Bank under the loan, and that a "default" under § 6 of the Subordination Agreement would only occur if Arrowpoint ceased making payments to the Bank under the credit facility. The Bank disputes that such a representation was ever made by Satterly and that Weiler could have reasonably relied upon such an alleged representation given that the terms of the Subordination Agreement were so clearly to the contrary.

Schwartz's Report does nothing more than bolster Weiler's interpretation of the Subordination Agreement's default term by essentially opining that it is more commercially reasonable than the interpretation of the Bank (and Arrowpoint). This is not the proper subject of expert testimony. *See H.C. Smith Invs., L.L.C. v. Outboard Marine Corp.*, 181 F. Supp. 2d 746, 751 (S.D. Mich. 2002) (citing *United States v. Cecil*, 836 F.2d 1431, 1441 (4th Cir.1988)) ("Since the scope of the contract between Plaintiff and Defendant is a matter of direct dispute between their competing witnesses -- Huth and Zeka -- this testimony violates the general rule that expert witness testimony not be used for the purpose of assessing another witness's credibility on non-technical or non-scientific points."). If the Court determines the Subordination Agreement to be ambiguous, it is for the jury to decide how the term "default" should be construed based on the parol evidence. *Id*. ("The substance of this testimony surrounds both the intent of Huth in contracting and the legal interpretation of the contract. Both of these subjects are generally taboo in terms of expert testimony because it is the role of the judge to instruct on the law and the role of the jury to decide ultimate questions of fact, particularly those respecting the intent and truth-telling of the parties.").

### III.   Schwartz's Report fails to meet the requirements of Fed. R. Civ. P. 26.

Weiler claims that Schwartz's Report adequately provides the basis and reasons for his opinions because the opinions are based on Schwartz's experience, personal knowledge, and his review of the documents provided by Weiler.  In support, Weiler cites to *Protocomm Corp. v. Novell Advanced Services, Inc.*, 171 F. Supp. 2d 473 (E.D. Pa. 2001),[2] which dealt with a challenge to the reliability of an expert witness's opinions under Rule 702.  The court noted that the expert's financial analysis opinions were set forth in a supplemental report detailing "a 14 stage process in which the financial analysis was performed."  *Id.* at 479.  Schwartz's Report does not contain any type of process or analysis for his opinions.  Rather, the Report provides only unsubstantiated legal conclusions.

"Expert reports 'must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions.'"  *Washington v. McKee*, 2006 U.S. Dist. LEXIS 53707, at *5 (E.D. Va. Aug. 3, 2006) (quoting *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)).  Here, Schwartz offers nothing but conclusions.  For example, he opines that the Bank "was required to provide Arrowpoint with commercially reasonable written notice of default under the loan agreement and credit facility between the parties" (Schwartz Report at ¶ 8), yet Schwartz offers no explanation for the bases supporting this opinion.  For example, what is Schwartz's basis for opining that this type of notice was "required" of the Bank?  If it some industry standards, written guidelines, authoritative treatises, or other authority, he is required to

---

[2]   The other case Weiler cites, *Hurst v. United States*, 882 F.2d 306 (8th Cir. 1989), involved expert testimony regarding the cause of flood damage.  It is factually distinguishable and thus not applicable here.

identify them and explain his reliance on them. He has not. Similarly, Schwartz opines that "[s]tandards and practices of commercial reasonableness and custom in the banking industry also require a specification of the nature of a default (Schwartz Report at ¶ 8), yet Schwartz fails to explain what these "standards," "practices" and "custom[s]" are, how or where they can be found, how accepted they are in the industry, or how he has become an "expert" on such standards, practices and customs. Without having the basis for his opinions, the Bank will not be able to "challenge the weight and credibility of Mr. Schwartz's testimony," as Weiler suggests.

What is more, the Schwartz Report does not provide the substance of the anticipated direct examination of Schwartz, as required by Rule 26(a)(2)(B). A Rule 26 expert report "is intended to set forth the substance of the direct examination of the expert witness," and must "disclose the data and other information considered by the expert." Advisory Committee Notes to the 1993 Amendments to Rule 26. The report must be "detailed and complete," and must state "the testimony the witness is expected to present during direct examination, together with the reasons therefor." As this Court recognized in *McKee*, an expert report satisfies Rule 26(a)(2)(B) if it is:

> "sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 211 (D.N.J. 2001) (quoting *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996)). Expert reports "must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998).

Schwartz's report falls well short of this standard. Once the redundancy in his Report is eliminated, Schwartz only offers approximately 6 or 7 opinions, none of which are more

than 2 or 3 sentences long.  *See* Memorandum in Support of Motion to Strike Expert Report and Exclude Plaintiff's Expert [Docket No. 197] at 7-8.  Plainly, Schwartz's anticipated direct examination would far exceed the few bare and conclusory opinions set forth in his Report.

In sum, Rule 26(a)(2)(B) requires "a complete statement of all opinions the witness will express and the basis and reasons for them."  Schwartz's Report fails to provide this required information, and his reliance on his experience and personal knowledge does not cure this deficiency.  Thus, the Report does not comply with Rule 26(a)(2)(B) and should be stricken.  *See Sharpe v. United States*, 230 F.R.D. 452, 458 (E.D. Va. 2005) (Friedman, J.) (citing Fed. R. Civ. P. 37(c)(1)) (failure to provide the information required by Rule 26(a)(2)(B) results in the exclusion of expert testimony).

### CONCLUSION

For the foregoing reasons, the Bank requests that the Court grant its Motion and enter an order striking Schwartz's Report and excluding him from testifying at trial.

        VIRGINIA COMMERCE BANK and
        JEFFREY SATTERLY

          /s/ Michael E. Lacy
        Robert A. Angle, VSB No. 37691
        robert.angle@troutmansanders.com
        Michael E. Lacy, VSB No. 48477
        michael.lacy@troutmansanders.com
        TROUTMAN SANDERS LLP
        1001 Haxall Point
        Richmond, Virginia  23219
        Telephone:  (804) 697-1200
        Facsimile:  (804) 697-1339
                Counsel for Virginia Commerce Bank and
                Jeffrey Satterly

## CERTIFICATE OF SERVICE

I hereby certify that on this **3rd** day of August, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

John D. Quinn, Esquire
Stephen Sale, Esquire
SALE & QUINN, P.C.
910 Sixteenth Street, N.W., Fifth Floor
Washington, D.C.  20006
202.833.4170 (phone)
202.887.5137 (fax)
    Counsel for Plaintiff

Douglas R. Kay, Esquire
Briglia, Hundley, Nuttal & Kay, P.C.
1921 Gallows Road
Suite 750
Vienna, Virginia  22182
    Counsel for Arrowpoint Corporation, Arrowpoint International Corporation
        And Chrystle Small

          /s/ Michael E. Lacy
    Robert A. Angle, VSB No. 37691
    robert.angle@troutmansanders.com
    Michael E. Lacy, VSB No. 48477
    michael.lacy@troutmansanders.com
    TROUTMAN SANDERS LLP
    1001 Haxall Point
    Richmond, Virginia  23219
    Telephone:  (804) 697-1200
    Facsimile:  (804) 697-1339
        Counsel for Virginia Commerce Bank and
        Jeffrey Satterly

1966614v1